UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CRAIG GAYMON,

      Plaintiff,

  - against -            **MEMORANDUM AND ORDER**
                     12-CV-4830 (RRM)(LB)

MTA BUS COMPANY and DENESSA BROWN,

      Defendants.

-------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

  Plaintiff *pro se* Craig Gaymon ("Gaymon") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), the New York State Human Rights Law, N.Y. Exec. Law §§ 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, *et seq.* ("NYCHRL"), asserting claims for employment discrimination against defendants Metropolitan Transportation Authority Bus Company ("MTA Bus") and MTA Bus supervisor Denessa Brown ("Brown") (together, "defendants"). (Compl. (Doc. No. 1).) Gaymon worked as a bus driver for MTA Bus until his termination on November 2, 2010, which he alleges was motivated by racial discrimination. (*Id.*)

  Before the Court is defendants' fully-briefed motion for summary judgment on all claims. (Doc. Nos. 55–63.) For the reasons set forth below, defendants' motion is GRANTED as to plaintiff's federal claims, and the Court declines to exercise supplemental jurisdiction as to any remaining state and city law claims.

# BACKGROUND[1]

Gaymon started working for MTA Bus in January 2006 when his then-employer, Jamaica Bus Company, turned over its business operations to MTA Bus. (Def.'s Aff. in Supp. of Mot., Ex. A (Doc. No. 59-1) at 15–16.) In November 2009, MTA Bus enacted a company-wide policy prohibiting its drivers from using "pagers, cellular phones (with or without a hands-free device) or any other electronic device" while operating buses. (*Id.*, Ex. B (Doc. No 59-2).) Disciplinary action resulting from violations of this policy fell within the collective bargaining agreement ("CBA") between Gaymon's representative, Local 100 of the Transport Workers Union ("Local 100"), and MTA Bus. (*See* Def.'s R. in Supp. of Mot., Ex. K (Doc. No. 62-1).) The CBA established a multi-step grievance mechanism consisting of three levels of internal hearings known as Step I, Step II, and Step III Hearings. Step II and III Hearings are triggered upon an employee's appeal of each preceding hearing determination. A Step III Hearing is followed by a final impartial arbitration. (*Id.* at 16–18.)[2]

In August 2006, prior to the implementation of this new policy, Gaymon received a citation from MTA Bus for using his cellphone while operating a bus. (Def.'s Aff. in Supp. of Mot., Ex. A (Doc. No. 59-1) at 30–33.) On December 2, 2009, after the promulgation of the policy, MTA Bus cited Gaymon for a second time based on a "cellphone violation, texting, and rudeness." (*Id.* at 33–37, Ex. C (Doc. No. 59-3).) Gaymon was accorded a Step I Hearing and received a one-day suspension. (*Id.*) Less than one month later, on December 30, 2009, Gaymon was again found to have violated the electronic device policy, which resulted in a ten-

---

[1] These facts are largely gleaned from exhibits that defendants attached to their summary judgment motion, including Gaymon's deposition ("Exhibit A"), Gaymon's arbitration award ("Exhibit H"), and documentation underlying Gaymon's state-court lawsuit ("Exhibit J"), which is addressed in the text *infra*. The facts are taken in the light most favorable to the non-moving party.

[2] This mechanism contained a proviso limiting MTA Bus at a Step I Hearing to considering only the immediately preceding year of the employee's disciplinary history. (*Id.* at 17, ¶ g.)

day suspension imposed at a Step I hearing. (*Id.* at 37–39; Ex. D (Doc. No. 59-3).) Gaymon appealed that decision and, after a Step II Hearing, MTA Bus reduced the suspension to five days. (*Id.*) On July 13, 2010, Gaymon once more violated the policy – his fourth violation – resulting in a ten-day suspension. (*Id.* at 42–44, Ex. E (Doc. No. 59-3).) Gaymon appealed that determination, but MTA Bus upheld the suspension after a Step II Hearing. (*Id.*)

Approximately four months later, on November 2, 2010, Gaymon was driving passengers on his bus route when Denessa Brown, an MTA supervisor, boarded the bus dressed in plain clothes. (*Id.* at 50–55.) Gaymon did not know that Brown was an MTA employee. (*Id.* at 53.) While Gaymon had the bus stopped at a traffic light, Brown – seated near the front of the bus with a direct view of Gaymon – saw Gaymon remove a cellphone from his pocket and press buttons on it. (Def.'s Aff. in Supp. of Mot., Ex. F (Doc. No. 59-3).) Gaymon repeated this conduct when he next stopped the bus, and did so again a third time later in the route. (*Id.*) At that point, Brown approached Gaymon and stated, "You're not supposed to have that thing out," referring to Gaymon's cellphone. (Def.'s Aff. in Supp. of Mot., Ex. A (Doc. No. 59-1) at 56–57.) Gaymon responded, "It's not that I was using it, I was just turning it off." (*Id.* at 58, 61.)

At the end of the route, Brown advised Gaymon that she was an MTA supervisor. (Def.'s Aff. in Supp. of Mot., Ex. F (Doc. No. 59-3).) Brown removed Gaymon from any further service that day and had him return to the bus depot. (Def.'s Aff. in Supp. of Mot., Ex. A (Doc. No. 59-1) at 59–60.) Gaymon insisted that the device Brown had seen was actually his iPod and he asked her to reconsider, but Brown refused. (*Id.*)

After a Step I Hearing that same day, MTA Bus terminated Gaymon's employment. (*Id.* at 63–68, Ex. G (Doc. No. 59-3).) Gaymon appealed and MTA Bus upheld his termination at Step II and III Hearings. (*Id.*) Gaymon's final appeal, at which he was represented by an

attorney and two Local 100 union officials, occurred before an impartial arbitrator. (*Id.* at 74–75, Ex. A (Doc. No. 59-1).) Gaymon claimed that the device he took from his pocket was not a cellphone, but rather an iPod that was overheating and that he was attempting to turn off. (*Id.* at 55–57, 84, 107.)[3]

The arbitrator upheld Gaymon's termination. The arbitrator credited Brown's "clear and consistent" testimony regarding the events that precipitated the firing, and voiced his skepticism as to Gaymon's "unbelievable" account of an iPod overheating. (Def.'s Aff. in Supp. of Mot., Ex. H (Doc. No. 59-3).) The arbitrator noted:

> [I]n the space of one year [Gaymon] was cited four times for cellphone violations. As such, he was progressively disciplined, but to no avail. He ignored important safety requirements. Under these circumstances, I find, the Employer's decision to dismiss the Grievant was proper.

(*Id.*)

Gaymon filed a petition in New York Supreme Court, challenging the arbitral decision under Article 78 of the N.Y. Civil Practice Law and Rules ("N.Y. C.P.L.R."). (Def.'s Aff. in Supp. of Mot., Ex. J (Doc. No. 59-3).) Gaymon's state petition alleged disparate treatment, pointing to a past showing of leniency by the same arbitrator toward fellow MTA Bus driver Joseph Minarczyk ("Minarczyk").[4] (*Id.*) Gaymon argued that Minarczyk had the same number

---

[3] There is apparently no transcript of Gaymon's arbitration hearing. Apart from the written arbitration award, the only evidence pertaining to that hearing is from Gaymon's deposition testimony, which defendants attached to their summary judgment motion.

[4] As described, Gaymon first invoked a comparison to Minarczyk in his state action, but did not raise any claim of racial discrimination. In Gaymon's current federal action, he refers to Minarczyk both in his complaint and response to defendants' motion for summary judgment. (*See* Compl. (Doc. No. 1) ¶¶ 26–27; Pl.'s Mem. in Opp. of Mot. (Doc. No. 61) at 3, ¶ 5.) Gaymon also refers to the arbitral award of a New York City Transit Authority employee, Edward Meehan. (Compl. (Doc. No. 1) ¶ 28.) Meehan was not employed by the MTA and there was no indication that his disciplinary citations involved an electronic-device ban, (*see id.* at 53), and consequently, during discovery in this action, Magistrate Judge Lois Bloom properly denied Gaymon's motion to compel the production of Meehan's personnel file, as Meehan clearly was not similarly situated to Gaymon. (Doc. No. 45.) *See, e.g.*, *Ruiz v. County of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (stating that, to qualify as a viable comparator for a claim of discrimination based on disparate treatment, the comparator must be similarly situated to the plaintiff "in all material respects") (internal quotations and citation omitted).

of cellphone violations in an even shorter span of time, and yet the arbitrator had reversed – not affirmed – Minarczyk's termination. Gaymon requested that his own arbitral award be vacated on the basis that no significant difference existed between his and Minarczyk's respective work histories, and that the arbitrator's failure to afford Gaymon similar leniency was groundless and unjust. (*Id.*) On January 4, 2012, the state court converted the proceeding on consent to a petition under Article 75 of the N.Y. C.P.L.R., and granted MTA Bus's motion to dismiss on the ground that Gaymon's petition failed to establish any valid basis for vacating the arbitration award. (Def.'s Aff. in Supp. of Mot., Ex. I (Doc. No. 59-3).)

Gaymon then filed the instant lawsuit for wrongful termination in violation of Title VII, Section 1983, the NYSHRL, and the NYCHRL, alleging claims of disparate treatment based on racial discrimination. (*See* Compl. (Doc. No. 1).) Defendants now seek summary judgment, which the Court grants.

## STANDARD OF REVIEW

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the Court must view all facts in the light most favorable to the non-moving party. *See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Nor

may a party "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

The Second Circuit has instructed that "special solicitude should be afforded *pro se* litigants . . . when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Thus, the pleadings of a *pro se* plaintiff, as here, must be read liberally and interpreted to "raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). "Nevertheless, proceeding *pro se* does not otherwise relieve plaintiffs from the usual requirements of summary judgment." *Adams v. New Jersey Transit Rail Operations*, No. 97-CV-430 (LAP), 2000 WL 224107, at *8 (S.D.N.Y. Feb. 28, 2000) (citing *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y.1995)). Moreover, the judicial role must be limited to being a discoverer, not a manufacturer, of a *pro se* plaintiff's arguments. *See, e.g.*, *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995) (reminding that a court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist").

**DISCUSSION**

To begin, Gaymon's claims under Title VII must be dismissed. To bring a discrimination claim under Title VII, it is axiomatic that a plaintiff must have filed, in the first instance, a formal discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). *See, e.g.*, *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d Cir. 2012) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)). Here, Gaymon has proffered no evidence that he ever filed a formal EEOC charge of employment discrimination against MTA Bus. In fact, Gaymon specifically acknowledged during his deposition that he was aware of the EEOC's role in

6

preventing discriminatory employment practices and that he had not filed an EEOC complaint. (Def.'s Aff. in Supp. of Mot., Ex. A (Doc. No. 59-2) at 135.) Accordingly, Gaymon's Title VII claim is dismissed as procedurally barred. Moreover, Gaymon's Title VII claim also fails on the merits for the reasons discussed immediately below in connection with his Section 1983 claim.

Gaymon cites to Section 1983 in his complaint and opposition to summary judgment, but without ever expressly joining a complementary, substantive basis for a cause of action under Section 1983. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Of course, "Section 1983 is not itself a source of substantive rights. It merely provides a method for vindicating federal rights elsewhere conferred." *Id.* Gaymon never explicitly invokes any such source of substantive rights, ostensibly failing to state any valid claim for relief. Nonetheless, the Court will overlook this shortcoming in light of Gaymon's *pro se* status. That is because, in pressing his cause of action under Title VII, Gaymon urges that Minarczyk – another MTA bus driver who is white – had a similar history of violating the MTA's electronic-device policy, and yet, unlike Gaymon, received leniency during the arbitration process. Because the gravamen of Gaymon's claim is that he received disparate treatment based on his race, the Court will read Gaymon's claim under Section 1983 as predicated in his right to equal protection under the Fourteenth Amendment.

To that end, a Section 1983 employment discrimination claim asserted as an equal protection violation is analyzed under the same standard as a Title VII discrimination claim. *See Patterson*, 375 F.3d at 225; *Feingold v. N.Y.*, 366 F.3d 138, 159 n.20 (2d Cir. 2004). And under that analysis, both his Section 1983 claim and his Title VII claim are without merit.

Generally, to state a claim for discriminatory discharge, "the plaintiff must show (1) that he belongs to a protected class; (2) that he was performing his duties satisfactorily; (3) that he

was discharged; and (4) that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *Chick v. Cnty. of Suffolk*, 546 F. App'x 58, 59 (2d Cir. 2013) (summary order) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). An inference of discriminatory intent may be drawn if an employee shows direct evidence of such intent, or if he demonstrates that he was subjected to disparate treatment compared to persons who were not members of his protected class but who were similarly situated in all other material respects. *See Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), overruled on other grounds by *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Cotterell v. Gilmore*, No. 12-CV-3808 (ADS), 2014 WL 6886079, at *20 (E.D.N.Y. Dec. 8, 2014).

Here, Gaymon cannot establish that his discharge occurred under circumstances giving rise to an inference of discrimination.[5] For one, there is no evidence whatsoever that the actions of Brown – who, like Gaymon, is African American – were motivated by race. It bears underscoring that even Gaymon admitted as much during his deposition. (*See* Def.'s Aff. in Supp. of Mot., Ex. A (Doc. No. 59-2) at 114–15 (Gaymon noting that Brown was "black as well" and that he did not "think" that Brown's conduct toward him was motivated by racial animus).)

Gaymon's attack on the impartiality of the arbitrator – whose race is unclear – is similarly unavailing. First, Gaymon's underlying claim – namely, that the arbitrator was biased because he treated Minarczyk (a white bus driver) more leniently despite their comparable history of electronic-device violations – is precluded by collateral estoppel. That is because Gaymon advanced this same basic argument in his Article 75 petition to vacate the arbitral award, which the New York Supreme Court dismissed on the merits. (*See* Pet. to Vacate

---

[5] The Court assumes for the purpose of the instant analysis that Gaymon was a member of a protected class, was qualified for the position, and suffered an adverse employment action.

8

Arbitration Award (Doc. No. 59-3 at 27–32 (ECF pag.)); Judgment/Order of New York Supreme Court, dated Jan. 4, 2012 (Doc. No. 59-3 at 24–25)).) Collateral estoppel precludes re-litigation of issues of fact and law actually litigated and resolved in a prior court determination when those issues were essential to the prior judgment, even if the issue recurs in the context of a different claim. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Burkybile v. Bd. of Ed. of the Hastingson-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005) (citing *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)). Under these circumstances, Gaymon is estopped from repackaging his challenge to the arbitrator's impartiality as an equal protection claim.

Even putting estoppel aside, Gaymon's cause of action for discrimination does not pass muster. For one, Gaymon has presented no evidence at all that MTA engaged in racially-preferential treatment toward Minarczyk over Gaymon. Gaymon expressly concedes that Brown, an MTA supervisor, was not motivated by racial animus in her observation and/or reporting of Gaymon's misconduct. Moreover, it bears strong emphasis that the MTA, in turn, terminated *both* Gaymon and Minarczyk. It was only the impartial arbitrator who then made the decision to uphold the MTA's dismissal of Gaymon but to overturn its dismissal of Minarczyk.

Assuming, then, that the MTA could even be held liable for an impartial arbitrator's disparate treatment of these two employees, Gaymon has not demonstrate any evidence of discriminatory intent on the part of the arbitrator, nor does the uncontroverted record establish that Gaymon and Minarczyk were similarly situated. The arbitrator set forth specific grounds upon which Gaymon and Minarczyk were meaningfully dissimilar, which formed the crux of his decision-making in each case. (*See* Arbitrator's Dec. as to Gaymon (Doc. No. 59-3, Exh. H); Arbitrator's Dec. as to Minarczyk (Doc. No. 1, Exh. L).) That is, while Minarczyk

9

acknowledged his guilt of the infraction, expressed remorse, and pleaded for a "last chance,"[6] Gaymon – who had multiple prior violations for the same kind of misconduct – refused to admit any wrongdoing. To the contrary, Gaymon insisted – implausibly, and directly contrary to Brown's observations (whom the arbitrator fully credited) – that he was only tending to an overheating music player, and not repeatedly using his phone while driving the bus. Gaymon, unlike Minarczyk, thus refused to take responsibility for his actions or to provide a meaningful indication that he would comply with the MTA's policy in the future. The arbitrator underscored this point in his decision, reasoning that it "behooves" an employee who has been disciplined and seeks to maintain his job "to be completely forthright," that the "record reveal[ed]" that Gaymon "was not," and that he "forfeited his right to leniency," in the arbitrator's view. (Doc. No. 59-3, Exh. H, at 4–5.) Given this material distinction between the behavior of Gaymon and Minarczyk, Gaymon has not offered sufficient evidence of disparate treatment to raise an inference of race discrimination.

And even if Gaymon and Minarczyk were so similarly situated that, on its face, any disparate treatment by the arbitrator was enough to trigger a discriminatory inference, the arbitrator's detailed explanation for his decision-making supplied a legitimate, race-neutral reason for the differing results that he reached in the two cases. Gaymon, in turn, has not put forth any evidence that the arbitrator's rationale was pretextual. *See Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000) (if employer offers non-discriminatory basis for its action, "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination").

---

[6] Notably, too, Minarczyk's wife was in her ninth month of pregnancy at the time of the violation, and the arbitrator credited the testimony of both Minarczyk and his wife that he was merely reading her e-mails or text messages (and not responding to them), as he was predictably concerned about her health. (*See* Doc. No. 1, Exh. L, at 3–4.)

Insofar as Gaymon mentions "selective enforcement" in his complaint, (*see* Doc. No. 1 at 1), an equal protection claim grounded in a theory of selective enforcement would also fail for the same reasons already described.[7] To prevail on such a claim, a plaintiff must show "(1) that []he was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race." *See Lener*, 2014 WL 4809452, at *12; *Gentile*, 769 F. Supp. 2d at 579; *see also Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 592–93 (S.D.N.Y. 2014). At the summary judgment stage, the plaintiff must present evidence comparing himself to individuals that are "similarly situated in all material respects." *Sloup v. Loeffler*, No. 05-CV-1766 (JFB), 2008 WL 3978208, at *18 (E.D.N.Y. Aug. 21, 2008) (internal quotation marks and citation omitted). As explained above, Gaymon and Minarczyk clearly were not "similarly situated in all material respects," and thus, this claim falls short as well.

Gaymon also raises claims under New York State and New York City law – specifically, the NYSHRL and NYCHRL.[8] However, having determined that Gaymon's federal claims do not survive summary judgment, the Court concludes that retaining jurisdiction over these

---

[7] Defendants construe Gaymon's reference to "selective enforcement" as connoting a "class-of-one" Fourteenth Amendment equal protection claim, (*see* Doc. No. 56 at 6–7), but class-of-one and selective-enforcement theories are not one and the same. The class-of-one doctrine pertains to individuals "who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlan Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Gaymon, though, apparently alleges that rules were selectively enforced against him based on his African-American heritage. A selective enforcement theory thus more appropriately suits any potential cause of action here. *See generally Lener v. Hempstead Public Schools*, No. 12-CV-3340 (JFB), 2014 WL 4809452, at *11–12 (E.D.N.Y. Sept. 23, 2014) (delineating between class-of-one and selective-enforcement claims); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 578–81 (S.D.N.Y. 2011) (same). Defendants are correct, however, that the Equal Protection Clause does not apply to public employees, like Gaymon, who are asserting a class-of-one theory of discrimination, and thus such an argument would be foreclosed in this case. *See id.* (citing *Engquist v. or. Dep't of Agric.*, 553 U.S. 591, 603 (2008)).

[8] The Court notes, but does not decide, that Gaymon's NYCHRL claim appears to be procedurally defective because there is no evidence that he complied with the statutory requirement that he serve a copy of the complaint on both the City Commission on Human Rights and Corporation Counsel prior to commencing the action. *See Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997); *see generally DeBerry v. Brookdale University Hosp. and Medical Center*, No. 12-CV-6251 (SLT), 2014 WL 1330857, at *5 (E.D.N.Y. Mar. 31, 2014).

remaining state and city law claims is unwarranted.[9] *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497 (MAT), 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.1986)).

Therefore, in the instant case, the Court, in its discretion, "decline[s] to exercise supplemental jurisdiction over plaintiffs state [and city] law claims because it has dismissed all claims over which it has original jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)) (quotations omitted); *see Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Liz Claiborne, Inc.*, No. 99-CV-3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated

---

[9] Gaymon hints at a variety of other wrongs carried out by defendants, including due process, contractual, and safety violations. Insofar as these claims are intelligibly presented, they would appear to fall under the governance of the MTA Bus-Local 100 CBA. For example, Gaymon claims that Brown was under an obligation to identify herself as an MTA supervisor from the moment that she boarded his bus, arguing that Brown somehow endangered Gaymon and his passengers by not doing so (notably, nowhere is such a restriction found in the CBA). Gaymon further maintains that his due process rights were violated because his termination was contrary to MTA Bus's "progressive discipline" policy. As defendants point out, the term "progressive discipline" is left broadly undefined in the CBA, and, nonetheless, Gaymon's suspensions for violating the electronic-device policy did, in fact, progressively increase in duration until the final violation that led to his termination. (Def.'s R. in Supp. of Mot. (Doc. No. 63) at 2–3.) Ultimately, none of these additional contentions states a valid basis for relief under any law, much less specifically under federal law.

by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state and city law claims given the absence of any federal claims that survive summary judgment.

## CONCLUSION

The motion of defendants MTA Bus and Brown (Doc. No. 55) is GRANTED in part insofar as dismissing Gaymon's claims brought under federal law. The Court declines to exercise supplemental jurisdiction over Gaymon's remaining state and city law claims. The Clerk of Court is directed to enter the Judgment accordingly.

The Clerk is further directed to mail a copy of this Memorandum and Order and the Judgment to *pro se* plaintiff Gaymon, and to close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Roslynn R. Mauskopf*

Dated: Brooklyn, New York
March 6, 2015

_____
ROSLYNN R. MAUSKOPF
United States District Judge